**FILED**

APR 2 2 2009



CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 03-30041-CBK |
|  | \* |  |
| Plaintiff, | \* |  |
|  | \* | REPORT AND RECOMMENDATIONS |
| -vs- | \* | FOR DISPOSITION OF MOTION UNDER |
|  | \* | §2255 TO VACATE, SET ASIDE OR |
| WILLIAM T. CARTER, | \* | CORRECT SENTENCE |
|  | \* |  |
| Defendant. | \* |  |
|  | \* |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above-captioned 28 U.S.C. §2255 case was referred to this Court, pursuant to 28 U.S.C. §636(b)(1)(B), for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition thereof.[1] Having carefully reviewed and considered all of the records on file and being fully advised in the premises, the Court does now make and propose the following findings, report and recommendations for resolution of the case.

## I.

Defendant, William T. Carter (Carter), an Indian, was charged in a seven-count Indictment with abusive sexual contact, sexual abuse of a minor and incest of his stepdaughter, one of his granddaughters and the granddaughter's friend. United States v. Carter, 410 F.3d 1017, 1020-21 (8th Cir. 2005) (Carter I). He was convicted by a jury on all seven counts and sentenced to 360 months in prison. 410 F.3d at 1021, 1028; United States

---

[1]The referral was made by the Honorable Charles B. Kornmann, United States District Judge, presiding.

v. Carter, 490 F.3d 641, 643 (8th Cir. 2007) (Carter II). On appeal, Carter argued that the trial court "erred in admitting certain evidence and limiting the cross-examination of a prosecution witness, in denying his motion for a judgment of acquittal on two counts, and in sentencing him." Carter I, 410 F.3d at 1020-21. He also maintained that the prosecutor's closing argument denied him a fair trial. Id. at 1021. The Eighth Circuit court of appeals affirmed Carter's convictions, but remanded the case to the trial court for resentencing. Id.; Carter II, 490 F.3d at 643.

After a hearing, the trial court sentenced Carter to 295 months imprisonment. Id. at 643. He again appealed, contending that the court erred in imposing certain sentencing enhancements. Id. The court of appeals, however, affirmed his sentence and judgment. Id. at 643, 646.

Carter then filed a motion under §2255 to vacate, set aside or correct his sentence. The district court thereafter conducted an initial consideration of the motion, denied a motion to dismiss the same, granted Carter leave to amend his motion and directed Plaintiff, United States of America (Government), to file an answer or responsive pleading, along with a memorandum in support thereof, that complied with Rule 5 of the Rules Governing §2255 Proceedings (§2255 Rules). The court, at the same time, referred the case to this Court to handle on a report and recommendation basis.

The Government complied with the district court's directives. In its response, the Government challenged the factual and legal basis for Carter's claims and requested that his §2255 motion be denied in its entirety.

## II.

The salient facts surrounding Carter's convictions are set forth in the appeals court's initial decision, see Carter I, 410 F.3d at 1021, and will not be repeated here. It will suffice to say that Carter sexually abused K.J.R., his stepdaughter, J.R.Y.H., his granddaughter, and B.A.S., a friend of his granddaughter, over approximately a one-year time period between December 18, 2000, and December 29, 2001, in Eagle Butte, South Dakota, on the Cheyenne River Sioux Indian Reservation. In addition to the three alleged victims, three other female witnesses testified regarding sexual abuse that Carter committed beyond that for which he was tried. The evidence of Carter's guilt was overwhelming and the jury's deliberations lasted less than four hours.

## III.

The district court, in its referral order, instructed this Court to determine whether an evidentiary hearing was required on Carter's §2255 motion. Carter has requested such a hearing and the Court is duty bound, under Rules 4(b) and 8(a) of the §2255 Rules, to determine whether a hearing is mandated or otherwise called for under the circumstances.

An evidentiary hearing is not required "where the files and records of the case conclusively show that the movant is not entitled to relief." Kingsberry v. United States, 202 F.3d 1030, 1032-33 (8th Cir.), cert. denied, 531 U.S. 829 (2000); see also United States v. Ledezma-Rodriguez, 423 F.3d 830, 835-36 (8th Cir. 2005). Such a hearing need not be held where the movant's claims are facially inadequate or affirmatively refuted by the record. Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007); see also Buster v. United States,

447 F.3d 1130, 1132 (8th Cir. 2006); <u>Sanders v. United States</u>, 341 F.3d 720, 722 (8th Cir. 2003), <u>cert</u>. <u>denied</u>, 540 U.S. 1199 (2004).

Carter's claims are ones that are capable of resolution from the record, as it now exists. <u>Blankenship v. United States</u>, 159 F.3d 336, 337 (8th Cir. 1998), <u>cert</u>.<u>denied</u>, 525 U.S. 1090 (1999); <u>Petersen v. United States</u>, 352 F.Supp.2d 1016, 1019 (D.S.D. 2005). After close scrutiny of the records on file, the Court is convinced that Carter cannot prevail on any of his claims. <u>Saunders v. United States</u>, 236 F.3d 950, 952-53 (8th Cir.), <u>cert</u>.<u>denied</u>, 533 U.S. 917 (2001); <u>see also United States v. Regenos</u>, 405 F.3d 691, 694 (8th Cir. 2005).

This being the case, Carter is not entitled to an evidentiary hearing and the Court shall proceed to dispose of his motion in a summary manner "as justice dictates." <u>See</u> Rules 4(b) and 8(a) of the §2255 Rules.

IV.

Section 2255(a), which provides post-conviction relief for federal prisoners, states as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

<u>See also</u> <u>Bear Stops v. United States</u>, 339 F.3d 777, 781 (8th Cir.) ("To prevail on a §2255 motion, the [movant] must demonstrate a violation of the Constitution or the laws of the United States."), <u>cert</u>. <u>denied</u>, 540 U.S. 1094 (2003). A motion pursuant to §2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'"

United States v. Wilson, 997 F.2d 429, 431 (8th Cir. 1993) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)).

Section 2255 relief though is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, see United States v. Frady, 456 U.S. 152, 167-68 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice, see United States v. Smith, 843 F.2d 1148, 1149 (8th Cir. 1988) (per curiam); accord Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) (in order to obtain collateral review of a procedurally defaulted claim, a movant must show either cause and prejudice or actual innocence).

The "cause and prejudice" necessary to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel. Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005), cert. denied, 546 U.S. 1177 (2006). Otherwise, "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for procedural default." Bousley v. United States, 523 U.S. 614, 622 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). "Prejudice" requires a showing that the error alleged "worked to [the movant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170. In other words, the movant must demonstrate that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offenses. Johnson, 278 F.3d at 844. To establish "actual innocence" as an alternative means of overcoming a defaulted claim, the movant must show that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. Bousley, 523 U.S. at 623. This is a strict standard and one that generally the movant

cannot satisfy where there is evidence sufficient to support his convictions. Johnson, 278 F.3d at 844; see also McNeal v. United States, 249 F.3d 747, 749-50 (8th Cir. 2001), cert. denied, 534 U.S. 1148 (2002).

With these standards in mind, the Court now turns its attention to Carter's various claims for relief.

V.

Carter raises several ineffective assistance of counsel claims. In doing so, he faces a heavy burden under the two-part Strickland test to establish that his trial counsel's assistance was ineffective. To prevail on his claims, Carter must show both (1) that counsel's performance was deficient, i.e., fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689. A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." Id. at 689-90. Counsel, therefore, cannot be judged ineffective as long as the approach taken "might be considered sound trial strategy." Id. at 689. When reviewing counsel's performance, a court must avoid using the "distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." Id. "[I]t is all too easy for a court examining counsel's defense after it is proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the movant cannot prove prejudice, a court need not address whether counsel's performance was deficient. Id. at 697.

Applying these precepts to the present case leads inescapably to the conclusion that Carter has failed to meet the rigid standards of Strickland and its progeny and therefore cannot prevail on, or obtain §2255 relief for, his ineffective assistance of counsel claims.

A.

Carter first claims that trial counsel was ineffective because she failed to specify the grounds for her objection to the introduction of a letter to him from J.R.Y.H. In the letter, J.R.Y.H. expresses the anger and hurt that she felt after Carter abused her. At trial, counsel objected when the letter was offered into evidence, but failed to specify the grounds for her objection. The trial court admitted the letter under Fed. R. Evid. 801(b)(1)(B), but the court of appeals determined that the letter did not fall within this hearsay exclusion. Carter I, 410 F.3d at 1023. Even so, the appeals court refused to "reach the merits of [ ] Carter's objection, since he failed to preserved [the same] for appeal." Id. The court, nonetheless, reviewed the admission of the letter for plain error and concluded that "its admission did not constitute a miscarriage of justice" because it "did not serve to bolster skimpy testimony" and "was only one page long" and because the testimony of J.R.Y.H. "was extensive." Id.

But does the court of appeals' finding that no miscarriage of justice on direct plain error review mean that there was not prejudice under <u>Strickland</u>? The answer to this question is by no means clear, but appears to be "no." To comprehend why requires an understanding of the differing standards of review on direct appeal and of a post-conviction motion.

On appeal, the issue is whether the trial court erred in its rulings at trial. Review of a preserved error is for prejudice, not mere error, and the appellate court generally will reverse only if the error is so prejudicial that it deprived the defendant of a fair trial. If no objection is made or the error is not otherwise preserved, then the trial court normally cannot be accused of error, much less prejudicial error. An appellate court does, however, have the discretion to review the proclaimed mistake for plain error, if a manifest injustice would otherwise result.

By contrast, when a post-conviction motion is filed alleging ineffective assistance of counsel, the defendant is asserting that the underlying proceedings were unreliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The ultimate determination, thus, is not the propriety of the trial court's conduct with respect to the averred error, but whether the defendant has suffered a deprivation of his right to effective assistance of counsel, such that the post-conviction court's confidence in the fairness of the proceeding is undermined.

The Court in <u>Strickland</u> recognized that this theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after relief has been denied on direct appeal because, in most cases, error that is not outcome-determinative on appeal will also fail to meet the prejudice prong of the <u>Strickland</u> test. 466 U.S. at 694, 697.

Nevertheless, Strickland cautions that the distinction in the standards of review is important because there are at least some cases in which the application of the two tests may produce differing results. Id. at 697.

This is borne out in Eighth Circuit cases that have found a basis for post-conviction relief, or recognized that such a basis could exist, despite finding no plain error on direct appeal. For instance, the court of appeals in Burns v. Gammon, 260 F.3d 892, 898 (8th Cir. 2001) observed that plain error review is "much more onerous" for both a direct appeal defendant and a habeas corpus petitioner than is review for a defendant or petitioner pursuing a properly preserved [ ] claim." See also United States v. Smith, 422 F.3d 715, 724 (8th Cir. 2005), cert. denied, 546 U.S. 1127 (2006); Roe v. Delo, 160 F.3d 416, 419 (8th Cir. 1998); Chambers v. Bowersox, 157 F.3d 560, 567 (8th Cir. 1998), cert. denied, 527 U.S. 1029 (1999).

But in Becht, 403 F.3d 503, 541 (8th Cir. 2005), the appeals court announced that "[t]he standard for prejudice under Strickland is virtually identical to the showing required to establish that a defendant's rights were affected under plain error analysis." See also United States v. Lee, Civil No. 4:06-CV-1608, 2008 WL 4079315 at **22-23, 44 (E.D. Ark. Aug. 28, 2008). According to the court, "[i]n both instances, the party challenging a conviction must show a reasonable probability that absent the alleged error, the outcome of the proceeding would have been different." Becht, 403 F.3d at 549; see also United States v. Dominguez Benitez, 542 U.S. 74, 81-82 (2004).

Even assuming, arguendo, that Carter I's holding is not dispositive of Carter's claim, the instant case is still not one that falls within the limited range of cases in which plain error

did not exist, but <u>Strickland</u> prejudice is present. Having reviewed the record and taken into account the Government's references to J.R.Y.H.'s letter in closing argument, the Court is unable to find and conclude that trial counsel's performance prejudiced Carter's defense in such a way that the outcome of the trial would have been different. The admission of the letter was not so powerfully incriminating that it so infected the trial as to warrant reversal. And, there is no reasonable probability that Carter would have been acquitted of some or all of the charges absent counsel's improper objection. <u>See</u> <u>United States v. Wright</u>, 540 F.3d 833, 843-44 (8th Cir. 2008), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>, (U.S. Dec. 16, 2008) (No. 07-2407); <u>United States v. Gabe</u>, 237 F.3d 954, 958-59 (8th Cir. 2001). As such, the requisite prejudice under <u>Strickland</u> is lacking and Carter's ineffectiveness claim must fail.

B.

The same is true with respect to Carter's claim that trial counsel was ineffective because she failed to object to certain remarks made by the prosecutor in closing argument. Specifically, Carter contends that the prosecutor's description of him as a "sexual predator", a "con man", "devious" and "deviate" affected the jury verdict and deprived him of a fair trial. Counsel failed to object to these descriptions and because of this, the court of appeals could only review them for plain error. <u>Carter I</u>, 410 F.3d at 1026. Finding that the Government presented "substantial and persuasive evidence of [ ] Carter's guilt", the appeals court concluded that "the prosecutor's comments did not result in a miscarriage of justice, although the comments came close to affecting substantial rights." <u>Id</u>.

While such name calling was improper and unjustified, the question under <u>Strickland,</u> is whether there was a reasonable probability that, absent the prosecutor's abusive comments,

the jury would have had a reasonable doubt as to his guilt on any of the charges. Although admittedly "close to the line", given the strength of the Government's case, there is no reasonable probability that the Government's intermittent characterizations would have altered the jury's verdict. <u>United States v. Bentley</u>, No. 07-2533, 2009 WL 928879 at *5 (8th Cir. Apr. 8, 2009). They were offensive to be sure, but not so offensive as to prevent a fair trial and undermine the Court's confidence in the outcome reached in this case.

## C.

Carter next claims that trial counsel was ineffective because she did not file a motion for a new trial, under Rule 33 of the Federal Rules of Criminal Procedure, based on information supplied by his wife, Tisha Carter (Tisha), that K.J.R. had recanted her trial testimony shortly after the trial. He includes affidavits from members of his own family (his daughter, mother and sister) to support his claim.

These affidavits, collectively reflect that Tisha told family members that her daughter, K.J.R., had falsely testified against Carter at trial to avoid drug charges that were pending against K.J.R. in state court. The affidavits, however, also indicate that Tisha later on told at least one family member (Darshan Carter-Barbosa) and Carter's §2255 counsel that K.J.R. had not been untruthful in her trial testimony.

As part of its response to Carter's §2255 motion, the Government submitted an affidavit of trial counsel that specifically addressed K.J.R.'s purported recantation of her trial testimony. The affidavit makes clear that counsel and her office investigated the matter and after doing so, concluded that there was not a good faith for filing a new trial motion:

After the trial, there was information supplied by Darshan [ ] that [K.J.R.] had recanted her testimony. Efforts to follow up on the alleged recantation at that time were fruitless in that [K.J.R.] would not speak to investigators for the Federal Public Defender.

[I] continued to investigate the claim that [K.J.R.] had recanted her trial testimony. Ultimately, in June of 2004, investigators for the Federal Public Defender interviewed [K.J.R.]. At that time, she said that she had not lied under oath, that she was tired of her mother [Tisha] pressuring her to change her trial testimony, and that she believed her mother was telling other people that [she] lied at the trial because there were arguments within the Carter family caused by [her] testimony.

Based on other interactions with the Carter family that included Darshan [ ] advising me that Tisha had lied about allegations made by another potential witness in the case, it appears that Tisha [ ] was fabricating the alleged recantation by [K.J.R.]. Tisha [ ] also advised me that Darshan [ ] was lying about conversations they supposedly had. In short, I had no way of knowing who was telling the truth when it came to conversations between Tisha [ ] and Darshan [ ]. The interaction between Tisha and Darshan was colored by [ ] Carter's pension check going to Tisha while he was in jail.

I did not have a good faith belief that [K.J.R.] had recanted her trial testimony. If anything, a motion for a new trial, had an evidentiary hearing been granted, would have solidified [K.J.R.'s] testimony, given what she had advised the investigators concerning her mother's efforts to make her change her testimony. Also, it was very evident to me that [K.J.R.] would not sign an affidavit under oath admitting or acknowledging in any way that her trial testimony had been false. Without such affidavit, there was no factual basis upon which to file a motion for a new trial.

The Sixth Amendment right to the assistance of counsel extends to motions for a new trial. United States v. Hilliard, 392 F.3d 981, 986-88 (8th Cir. 2004); United States v. Baker, 492 F.Supp.2d 1167, 1169-73 (D. Neb. 2007). Ineffective assistance of counsel claims, based on the failure to file a new trial motion, are analyzed under the framework of Strickland. Hilliard, 392 F.3d at 986; Baker, 492 F.Supp.2d at 1169.

The fact that trial counsel did not file such a motion is not, in and of itself, sufficient to satisfy the first prong of the <u>Strickland</u> test. This is especially true in this case because counsel investigated the recantation allegations and concluded, after an interview with K.J.R. herself, that there was not a good faith basis for filing a new trial motion. Given the pre-trial allegations by Carter family members that K.J.R. was lying, counsel had serious doubts about the veracity of K.J.R.'s alleged recantation. Counsel was also concerned about solidifying K.J.R.'s testimony in light of what K.J.R. had reported concerning Tisha's efforts to make K.J.R. change her testimony. And, K.J.R.'s adamant refusal to recant her trial testimony, when questioned after the fact about it, and her refusal to sign an affidavit acknowledging that she had testified falsely, were significant factors in counsel's decision-making process.

Motions for a new trial, based on the recantation of a material witness, are viewed with skepticism. <u>United States v. Rouse</u>, 410 F.3d 1005, 1009 (8th Cir. 2005). "This skepticism 'is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon,' particularly 'when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story.'" <u>Rouse</u>, 410 F.3d 1009 (<u>quoting</u> <u>United States v. Provost</u>, 969 F.2d 617, 621 (8th Cir. 1992), <u>cert</u>. <u>denied</u>, 506 U.S. 1056 (1993)). To receive a new trial, the defendant must show "that the newly discovered evidence is of such a nature that, in a new trial [such evidence] would probably produce an acquittal." <u>Rouse</u>, 410 F.3d at 1009 (<u>quoting</u> <u>United States v. Papajohn</u>, 212 F.3d 1112, 1118 (8th Cir. 2000)). When a child victim of sexual abuse is alleged to have recanted, a determination must be made whether the recantation is credible. <u>Rouse</u>, 410 F.3d

at 1009. In this regard, the real question is not whether a court would believe the recantation, but how likely the court would think a jury at a second trial would believe it. Id.

Assuming K.J.R. did in fact recant her trial testimony, and that is debatable, a reasonable person in trial counsel's position could have easily concluded that a new trial motion had no merit because the recantation would probably not have produced an acquittal at a new trial. The proffered affidavits of Carter's family members corroborates this and suggests that K.J.R. has recanted any prior alleged recantation.

Trial counsel, therefore, can hardly be faulted, much less held to be deficient or said to have prejudiced Carter, within the meaning of Strickland, by not filing a new trial motion that had no chance of being successful. See DeRoo v. United States, 223 F.3d 919, 925-26 (8th Cir. 2000). Carter has thus failed to state a claim upon which §2255 relief can be granted.

## D.

Carter also claims that appellate counsel (who was also trial counsel) was ineffective because she failed to argue on appeal that the trial court's sentence was unreasonable (i.e., greater than necessary to achieve the goals of sentencing under United States v. Booker, 543 U.S. 220 (2005)) because the court placed too much weight on the sentencing guidelines. He asserts that the court "focused overwhelmingly and nearly exclusively on the guidelines," and failed to address non-guidelines sentencing factors. By doing so, he maintains, the court failed to follow the Supreme Court's plan in Booker by giving the guidelines preeminence over all other factors in reintroducing the unconstitutional aspect into the sentencing process that Booker removed. The Court disagrees.

The resentencing hearing transcript plainly indicates that the trial court was well aware that the sentencing guidelines were advisory under <u>Booker</u>, stated its intention to apply the guidelines in this manner and later did so. The transcript likewise reflects that the court considered each of the required sentencing factors set forth in 18 U.S.C. §3553(a) and that it considered other factors in addition to the guidelines. Significantly, the court found that Carter, by his trial testimony, obstructed justice and perjured himself. The court also found that Carter used his position as a law enforcement officer and as a tribal advocate to get close to and take advantage of his victims. Ultimately, the court sentenced Carter within the sentencing guideline range specified by the court of appeals (262 to 327 months).

To say, as Carter apparently does, that the trial court treated the advisory guidelines as some "super factor" while ignoring or paying at most lip service to other factors, is belied by the record. The court instead, adhered to the dictates of <u>Booker</u> and applied a myriad of factors, including the guidelines, in arriving at Carter's sentence.

Appellate counsel acted well within the bounds of reasonableness and effective advocacy by choosing not to press the "greater than necessary" issue on appeal. This issue had little, if any, merit and was one that could and should have been winnowed in favor of others. Counsel's failure to raise the issue on appeal was neither deficient nor prejudicial. <u>See</u> <u>Garrett v. United States</u>, 78 F.3d 1296, 1306 (8th Cir.), <u>cert. denied</u>, 519 U.S. 956 (1996).

E.

In a similar vein, Carter claims that appellate counsel should have argued on appeal that he was sentenced in violation of his Fifth and Sixth Amendment rights to due process and to a jury trial. This claim too does not provide him with a basis for relief.

During the resentencing hearing, the trial court found that there was substantial evidence offered during the trial, under Fed. R. Evid. 413, which suggested that the three victims of Carter's sexual abuse "were only the tip of the iceberg" and that he committed similar acts of abuse on others. In response to the court's finding, trial counsel emphasized that Carter should be sentenced only for the offenses involving the three victims named in the Indictment and not the 19 women mentioned during the course of the proceedings. Carter now maintains that counsel's statement was in effect a request made to the court to base his sentence solely on facts submitted to and found by a jury beyond a reasonable doubt. This issue, he says, should have been raised on appeal and counsel's failure to do so fell below an objective standard of reasonableness and prejudiced him.

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Subsequently, the Supreme Court in Ring v. Arizona, 536 U.S. 584, 589 (2002) clarified and reaffirmed this rule, holding that the rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. The "'statutory maximum' for Apprendi purposes is the maximum sentence a judge

16

may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Booker, 543 U.S. at 232.

1.

Carter was not sentenced beyond the statutory maximum penalty he faced for six of the seven offenses he was convicted of. He was, however, sentenced to 36 months of imprisonment on Count VII, an abusive sexual contact offense involving J.R.Y.H., when the maximum statutory penalty for that offense was (and still is) 24 months. The trial court's 36-month sentence, therefore, exceeded the statutory maximum and was error under Apprendi and Booker.

This sentencing error though did not prejudice Carter or have a bearing on the ultimate sentence he received. Carter was ordered to serve the 36-month prison sentence on Count VII concurrently with the 148-month sentence imposed on Count IV, a sexual abuse offense that also involved J.R.Y.H. The statutory maximum penalty for the latter offense was, and remains today, imprisonment of not more than 180 months (i.e., 15 years). Because Carter was required to serve his prison term on Count VII concurrently with the much longer term imposed on Count IV and because the custody sentence imposed on the sexual abuse offense was substantially less than the statutory maximum for that offense, he was not detrimentally impacted. Indeed, a prison sentence at or below the 24-month statutory maximum on the abusive sexual contact offense would be of no help to Carter, both then and now, because it would not change the 295-month custody sentence he was ordered to serve. Had the sentences in Counts VII and IV been consecutive to each other, Carter would have grounds to complain. But they were concurrent. Any Apprendi/Booker error, therefore, was

insufficient to establish prejudice, under <u>Strickland</u>, and to overcome Carter's procedural default, by virtue of his failure to bring up or even make reference to the error in his §2255 motion or otherwise. <u>Becht</u>, 403 F.3d at 545-50.

## 2.

Carter's claim that appellate counsel was ineffective because she did not raise an <u>Apprendi</u>/<u>Booker</u> issue on appeal, based on Rule 413 evidence the trial court relied on when imposing sentence, is similarly unavailing. In assessing the history and characteristics of a defendant, there is no limitation on the information concerning the background, character and conduct of a defendant which a court may consider in determining an appropriate sentence. <u>Booker</u>, 543 U.S. at 251 (<u>citing</u> 18 U.S.C. §3661). As such, factors previously deemed irrelevant to sentencing under Chapter 5H of the sentencing guidelines are now valid considerations for a court when imposing sentence.

The trial court here was well within its discretion and authority to consider Carter's sexual assaults against other females under §3553(a)(1) and 3661. It is not clear how a court's consideration of these assaults affected Carter's sentence and to speculate to what extent (if any) they did, is tantamount to performing a sentencing function on collateral review. This the Court will not do.

## 3.

Carter has not shown that his sentence was rendered unreliable by appellate counsel's deficiencies or that the sentence he received was fundamentally unfair. Accordingly, he is not entitled to relief under the Sixth Amendment based on counsel's failure or refusal to raise alleged <u>Apprendi</u>/<u>Booker</u> errors.

## VI.

As his last claim for relief, Carter asserts that he was convicted on the basis of false testimony, in violation of his due process rights, and entitled to a new trial. He contends that K.J.R. testified falsely at trial and that the Government used this false testimony to help convict him of all seven charges.

The Court has already discussed, and rejected, Carter's claim that trial counsel was ineffective because she failed or refused to file a new trial motion based on K.J.R.'s alleged post-trial recantation. Ante at 11-14. The reasons for not accepting this claim, apply with equal force and defeat Carter's Fifth Amendment due process claim as well.

Aside from this, K.J.R.'s reported recantation is suspect. It was not made to a neutral and detached observer, but rather to her mother, and Carter's wife, Tisha. Tisha testified at trial that she was always home and that K.J.R. and J.R.Y.H. were never alone in the house with Carter. Later, after allegedly telling family members that K.J.R. had testified falsely against Carter at trial, Tisha denied this and accused Darshan of fabrication. On this record, the credibility of K.J.R.'s so-called recantation is dubious, at best. And, Carter's equivocal showing falls far short of demonstrating that there is a reasonable probability that the supposed recantation would produce an acquittal if a new trial was held. He thus was not entitled then, and is not entitled now, to a new trial under Rule 33 or the Due Process Clause.

## VII.

A movant is required to obtain a certificate of appealability (COA) from a district or circuit judge before appealing from the final order entered in a §2255 proceeding. 28 U.S.C. §2253(c)(1)(B). A district court is authorized to determine a COA if the movant "has made

a substantial showing of the denial of a constitutional right." §2253(c)(2); <u>United States v. Lambros</u>, 404 F.3d 1034, 1036 (8th Cir.), <u>cert. denied</u>, 545 U.S. 1135 (2005); <u>Garrett v. United States</u>, 211 F.3d 1075, 1076 (8th Cir.) (<u>per curiam</u>), <u>cert. denied</u>, 531 U.S. 908 (2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." <u>Garrett</u>, 211 F.3d at 1077; <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997), <u>cert. denied</u>, 525 U.S. 834 (1998).

The Court is convinced that Carter cannot satisfy this standard and make the requisite "substantial showing" with respect to any of his claims. None of the claims even arguably run afoul of the Constitution and for this reason a COA, based on them, should be denied.

VIII.

Based on the foregoing findings of fact and legal discussion and pursuant to §636(b) and Rule 8(b) of the §2255 Rules, it is hereby

RECOMMENDED that Carter's Motion under §2255 to vacate, set aside or correct sentence by a person in federal custody, as amended, Docket Nos. 156, 177, 179, be dismissed in its entirety and with prejudice. It is further

RECOMMENDED that a COA, if one is sought by Carter, de denied as to all issues and claims raised in his §2255 motion.

Dated this 22nd day of April, 2009, at Pierre, South Dakota.

BY THE COURT:

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                    Deputy
(SEAL)

## NOTICE

Failure to file written objections to the foregoing Report and Recommendations within 10 days from the date of service shall bar an aggrieved party from attacking the Report and Recommendations before the United States District Judge assigned to review the case. See §636(b) and 8(b) of the §2255 Rules.