UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

FILED
NOV 16 2020


| UNITED STATES OF AMERICA, | 1:03-30041-CBK |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| WILLIAM T. CARTER, | |
| Defendant. | |

    Defendant was convicted by a jury of four counts of abusive sexual contact, two counts of sexual abuse of a minor, and incest. He was originally sentenced to a total term of 360 months imprisonment. His convictions were affirmed but the United States Court of Appeals for the Eighth Circuit remanded for resentencing. United States v. Carter, 410 F.3d 1017 (8th Cir. 2005). Defendant was resentenced on December 5, 2005, to a total term of 295 months imprisonment. He appealed his sentence and the Eighth Circuit affirmed. United States v. Carter, 490 F.3d 641 (8th Cir. 2007). Defendant filed a motion to vacate, set aside, or correct his convictions and sentences pursuant to 28 U.S.C. § 2255. The matter was referred to United States Magistrate Judge Mark A. Moreno who recommended the motion be denied. United States v. Carter, 629 F.Supp.2d 934 (D.S.D. 2009). Following a *de novo* review, I denied the motion to vacate. United States v. Carter, 629 F.Supp.2d 948 (D.S.D. 2009).

    Defendant has filed a motion for compassionate release. The Bureau of Prisons ("BOP") has calculated defendant's current release date as April 6, 2024. https://www.bop.gov/inmateloc visited November 13, 2020.

    The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission issued Guidelines § 1B1.13 setting forth the Commission's policy statement on compassionate release, which were consistent with § 3582(c).

Pursuant to the First Step Act of 2018, the district court is now authorized to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Pub. L. 115-391, § 603(b), 18 U.S.C. § 3582(c)(1)(A). The government contends that defendant has not exhausted his administrative remedies. I need not address that issue because, as set forth below, I find that the defendant is not entitled to compassionate release.

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that

(1) (a) extraordinary and compelling reasons warrant such a reduction, or

(b) the defendant is at least 70 years of age and has served at least 30 years in prison for the offense or offenses for which the defendant is currently imprisoned

and

(2) the defendant is not a danger to the safety of any other person or the community.

18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

Defendant requests compassionate release based upon his medical conditions, including coronary artery disease, elevated blood pressure, suspected COPD, hyperlipidemia, prediabetes, gastrointestinal issues, and others, his age, 74 years, and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

2

United States v. Frost, ___ F.3d ___, ___, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) *citing* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant suggests that he should be resentenced to time served, a little over 17 years, and, if deemed necessary, placed on home confinement as a condition of supervised release. He proposes that he be released to reside in Eagle Butte, South Dakota.

I reject defendant's claim that he is entitled to compassionate release. I find that the COVID-19 public health emergency does not warrant defendant's release.

Petitioner is housed at the Englewood Federal Correctional Institution in Littleton, Colorado. That institution currently has four inmate confirmed cases of COVID-19. https://www.bop.gov/coronavirus/, visited November 13, 2020. There have only ever been ten inmate cases at FCI Englewood, with six inmates having recovered. *Id.* There have been no inmate deaths at that facility. FCI Englewood houses 903 inmates. https://www.bop.gov/locations/institutions/eng/, visited November 13, 2020. It is remarkable that the BOP has limited inmate infections to just ten over the course of the last nine months.

South Dakota, on the other hand, currently has the second highest per capita cases in the nation. https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days, visited November 13, 2020. Eagle Butte is located on the Cheyenne River Indian Reservation on the border of Dewey and Ziebach Counties. Together, there have been four deaths and 824 confirmed cases in those counties, https://doh.sd.gov/news/Coronavirus.aspx#SD, whose total population is 8,646. Over 9% of the population in those counties has been infected, compared to 1% of the population at FCI Englewood.

I further reject defendant's claim that he is entitled to compassionate release because I specifically find that his earlier release would endanger the community. He is a very dangerous individual. I was the trial judge. Defendant was convicted of sexually abusing three different victims. One of the victims was defendant's step-daughter. Defendant offered her money to watch pornography. He suggested to her that she could make a lot of money as a prostitute. He gave her many hand-written notes describing sexual acts he wanted her to engage in with him. He gave her alcohol and, when she was intoxicated and went to sleep, defendant sexually abused her.

One of the victims was a friend of defendant's granddaughter who was living in a group home. Defendant acted as her legal advocate. The victim would stay at defendant's home on the

3

weekends. Many times, defendant gave her alcohol and marijuana. Defendant put pornographic videos on for her to watch and told the victim how much money the young girls in the videos made. He then sexually abused her. She engaged in cutting behavior to try to deal with the offense. Following her testimony at trial, she attempted to overdose on anti-depressants.

One of the victims was defendant's granddaughter who lived with the defendant. Defendant gave her alcohol and marijuana. Defendant wrote letters to her about having sex with him. Defendant put pornographic videos on for her to watch. Defendant engaged in sexual acts with her many times, including when she would black out. She testified at the sentencing hearing that she had to take medication to control the flashbacks, depression, and anxiety the abuse caused her. She told the defendant at the sentencing hearing that his prison time would be a minor pain compared to the hell he put her through.

Another girl testified at trial that, when she had a fight with her mother and came to stay at the defendant's house, defendant gave her alcohol. She fell asleep and woke up to find the defendant engaging in sexual intercourse with her. Yet another girl testified that defendant took her for a car ride, gave her alcohol, and when she woke up, she was wet and sore in the private area. Another girl testified that defendant had her watch a pornographic video, gave her alcohol, and had sexual intercourse with her many times.

At the sentencing hearing, yet another woman testified that, when she was a teenager, defendant provided her alcohol and invited her to sleep in a bed at his home. When she woke up, the defendant was having sexual intercourse with her. Another woman testified at sentencing that, when the defendant was her legal advocate, defendant would give her alcohol, cigarettes, marijuana, and money in exchange for her agreeing to engage in sexual acts with the defendant at his home. Defendant would have her watch pornographic videos with him while his young children were home. One of the videos appeared to be home made and involved girls in their early teens. Another woman testified at sentencing that, when she was a teenager, defendant was her lay advocate in tribal court. Defendant hired her to babysit defendant's son, which she agreed to do because she owed him. The child was not at home when she arrived. Defendant offered her alcohol and pornographic videos to watch. He engaged in sexual contact with her and suggested she could stay the night. She did not.

The trial and sentencing hearing were replete with women who claimed that, when they were teenagers, defendant sexually abused them. Defendant had been chief of police and a tribal

4

legal advocate, which positions enabled him to have access to some of his victims and kept most of them from reporting the abuse. The investigating agent from the Federal Bureau of Investigation testified at sentencing that he had not, in his career, seen a case of sexual abuse as extensive as defendant's in terms of duration.

Defendant testified at trial and denied all the alleged sexual misconduct. I stated at defendant's sentencing hearing that the evidence in his case was as strong as I've seen in any case that I tried.

Defendant was 57 years old at the time I sentenced him. He claimed that he was not in good physical health at that time, owing to arthritis, headaches, shoulder pain and pain resulting from his military service and the injuries he suffered in a previous gang fight. He also suffered PTSD as a result of his service in Vietnam.

Defendant still suffered PTSD, headaches, shoulder pain, and arthritis. Defendant underwent surgery for the placement of a heart stent to treat coronary artery disease in February 2020. He has not required significant follow-up care since. He is now age 74.

I have considered the entire file, including the trial and sentencing transcripts, and the defendant's medical records from the BOP. I have also considered all of the statutory factors set forth in 18 U.S.C. §3553(a), which weigh heavily against the release of the defendant.

As to his health concerns, he will receive far better medical care and monitoring in the custody of the Bureau of Prisons (BOP) than he will receive on home confinement, living in an isolated community with sub-standard health care available. The Governor of South Dakota has refused to wear a mask and questions publicly the scientific basis for wearing a mask. Her example and enabling encourage citizens not to wear masks. People in this state are not safe.

Now, therefore,

IT IS ORDERED that defendant's motion, Doc. 201, for compassionate release is denied.

DATED this 16th day of November, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

5